Argued and submitted March 31, 2016; reversed on petition, affirmed on cross-petition March 8, 2017

In the Matter of the Compensation of
Joy M. Walker, Claimant.
PROVIDENCE HEALTH SYSTEM OREGON,
*Petitioner*
*Cross-Respondent,*

*v.*

Joy M. WALKER,
*Respondent*
*Cross-Petitioner.*

Workers' Compensation Board
0906234; A156440

391 P3d 919

Vera Langer argued the cause for petitioner-cross-respondent. On the opening brief were Theodore P. Heus and Lyons Lederer, LLP. With her on the reply and answering brief was Lyons Lederer, LLP.

Julene M. Quinn argued the cause and filed the briefs for respondent-cross-petitioner.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

This is the second time that we are asked to review an order of the Workers' Compensation Board relating to claimant's entitlement to a penalty under *former* ORS 656.268(5)(d) (2009), *renumbered as* ORS 656.268(5)(f) (2015),[1] and attorney fees under ORS 656.382(1), for employer's failure to close her claim within 10 days of her September 30, 2009, request for closure.

In its first order addressing the issue, the board rejected claimant's request for a penalty, determining that there were no amounts "then due" on which to base a penalty at the time employer closed the claim on November 5, 2009. In our judicial review of that order in *Walker v. Providence Health System Oregon*, 254 Or App 676, 298 P3d 38, *rev den*, 353 Or 714 (2013) (*Walker III*), we disagreed with the board's reasoning. We held, first, that any penalty that might be due claimant under *former* ORS 656.268(5)(d) (2009) as a result of employer's *de facto* refusal to close claimant's claim on October 10, 2009 (*i.e.*, within 10 days of claimant's September 30, 2009, request for closure), must be based on the amount of compensation that claimant would have been entitled to be paid if employer had closed the claim on that date. *Walker III*, 254 Or App at 684. That amount was 35 percent permanent partial disability. *Id.* at 685.

We further explained, however, that whether employer's *de facto* failure to close the claim entitled claimant to any penalty at all also depended on whether employer had a "legitimate doubt" as to its obligation to close the claim. *Id.* Claimant had argued that employer did not have a legitimate doubt about its duty to close the claim on October 10, 2009, because, by that date, it had "sufficient information" on which to base a closure of the claim, as required by ORS 656.268(1)(a) (providing that an employer generally must

---

[1] *Former* ORS 656.268(5)(d) (2009) provided:

"If an insurer or self-insured employer has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close was not reasonable, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in amount equal to 25 percent of all compensation determined to be then due the claimant."

close a claim when the claimant "has become medically stationary and there is sufficient information to determine permanent disability"). The board had not addressed that contention, determining instead that the fact that claimant's right to payment of compensation had been "suspended" gave employer a legitimate doubt as to its duty to close the claim. We rejected that reasoning, *Walker III*, 254 Or App at 688-89, explaining that *former* ORS 656.268(5)(b) (2009), *renumbered as* ORS 656.268(5)(d) (2015),[2] provided an "unambiguous mandate" to close a claim within 10 days of a worker's request for closure (when the claim is otherwise subject to closure under ORS 656.268) and the fact that benefits had been suspended did not alter that obligation. *Id.* We therefore remanded the case for the board to address in the first instance claimant's contention that employer did not have a legitimate doubt as to its duty to close the claim on October 10, 2009, because it had "sufficient information" on which to base claim closure under ORS 656.268(1)(a).

On remand, employer contended that, in light of claimant's failure to comply with the requested independent medical examination, the record lacked sufficient information on October 10, 2009, to determine the extent of claimant's permanent disability due to the newly accepted conditions of major depression and panic disorder[3] and, therefore, employer had a legitimate doubt as to its obligation to close the claim. The board disagreed. The board reasoned that, because the medical record on November 5, 2009—the date

---

[2] At the relevant time, *former* ORS 656.268(5)(b) (2009) provided:

"If the insurer or self-insured employer has not issued a notice of closure, the worker may request closure. Within 10 days of receipt of a written request from the worker, the insurer or self-insured employer shall issue a notice of closure if the requirements of this section have been met or a notice of refusal to close if the requirements of this section have not been met."

[3] Based on that failure, employer lawfully suspended claimant's benefits pursuant to ORS 656.325(1). In *Walker v. Providence Health Systems Oregon*, 267 Or App 87, 102, 340 P3d 91 (2014), *adh'd to as modified on recons*, 269 Or App 404, 344 P3d 1115 (2015) (*Walker IV*), we held that (1) employer was entitled to request and reasonably requested an independent medical examination (IME) in the process of evaluating claimant's impairment for the purpose of claim closure, ORS 656.325(1); (2) claimant was required to submit to the IME unless relieved of that obligation by the Compliance Section of the Workers' Compensation Division of the Department of Consumer and Business Services; and (3) employer lawfully suspended claimant's benefits pursuant to ORS 656.325(1) when claimant refused to attend the IME.

that employer actually closed the claim—was the same as the medical record on October 10, 2009, employer necessarily had "sufficient information" on October 10, 2009, on which to base claim closure.

On judicial review, employer contends that the board erred. We agree. It is undisputed that the November 5, 2009, closure was an "administrative" closure (based on the suspension of claimant's benefits) that had nothing to do with the existence of "sufficient information" from which to determine permanent partial disability. *See Walker III*, 254 Or App at 680 (describing November 5, 2009, closure); OAR 436-030-0034 (providing for administrative closure when a claimant does not attend a closing examination or when a suspension order has been issued). Because the November 5, 2009, closure was not based on the board's consideration of the medical record, the fact that the record on that date happened to be the same as the record that existed on October 10, 2009, has no relevance. Put another way, no inference can be drawn from the November 5 closure that employer had sufficient information from which to determine permanent partial disability on October 10, 2009.[4] Thus, we conclude that the board erred in basing its assessment of a penalty on that rationale.

We further conclude that, in light of claimant's continued refusal on October 10, 2009, to attend employer's lawfully requested independent medical examination (IME), employer did have a legitimate doubt as to its legal obligation to close the claim under ORS 656.268. We addressed this issue in our opinion in *Walker IV*, decided after the board's order on remand in this case. In *Walker IV*, claimant challenged the board's determination that employer's refusals to close the claim in response to claimant's requests for closure on March 25 and March 31, 2009, did not warrant

---

[4] The Director of the Department of Business and Consumer Services has adopted an administrative rule explaining what constitutes "sufficient information" in different circumstances. At the relevant time, OAR 436-030-0020 (2009) provided that, when the record reveals that there is permanent impairment attributable to the accepted condition, "sufficient information" requires

"[a] closing medical examination and report when there is a reasonable expectation of loss of use or function, changes in the worker's physical abilities, or permanent impairment attributable to the accepted condition(s) based on evidence in the record or the physician's opinion."

a penalty under *former* ORS 656.268(5)(d) (2009), because employer's refusals to close the claim were not unreasonable, in light of claimant's refusal to attend the requested IME. In *Walker IV*, we affirmed the board's order on that issue, holding that employer reasonably requested the IME and that claimant was required to attend. 267 Or App at 103. We said that "employer was entitled to request the IME in the process of evaluating claimant's impairment for the purpose of claim closure," *id.* at 101, and that, in light of claimant's continued refusal to attend the IME, employer's failure to respond to requests for closure were not unreasonable. *Id.* at 103. The same rationale applies here. Although, as we held in *Walker III*, the suspension of claimant's benefits based on her failure to attend the IME did not, itself, provide employer with a legitimate doubt as to its obligation to close the claim under *former* ORS 656.268(5)(b) (2009), 254 Or App at 689, in light of the fact that employer was statutorily entitled to request an IME before claim closure, we conclude that claimant's refusal to submit to the IME allowed employer reasonably to conclude that it did not have sufficient information from which to determine claimant's permanent disability attributable to her compensable injury and provided legitimate doubt as to its obligation to close the claim. We therefore reverse the board's order assessing a penalty and attorney fees. Our resolution of the petition resolves the issue in claimant's cross-petition—that she is entitled to an additional attorney fee under ORS 656.382(1)—against her.

Reversed on petition; affirmed on cross-petition.